THE STATE OF FLORIDA, ex rel., JOHN BARNETT, ARMANDO LOPEZ, MANUEL MENENDEZ, ARNOLD NELSON, WALTER PECK, ENROQUETA PALACIOS, FRANK VOIGT AND PAUL LIMA, *Relators*, vs. R. A. GRAY, Secretary of State of the State of Florida, *Respondent*.

144 So. 349.

Opinion filed October 18, 1932.

74

*Edwin L. Bryan,* for Relators.

WHITFIELD, J.— Statement.

Section 30, Chapter 4328, Acts of 1895, the general election law of Florida, is as follows:

"The board of county commissioners of each county shall cause to be printed on the ballots to be used in their respective counties the names of all candidates who have been put in nomination by any caucus, convention, mass meeting, primary election or other assembly of any political party or faction in this State and certified and filed with them not more than sixty nor less than twenty days previous to the day of election, which certificates shall contain the name of each person nominated and the office for which he is nominated, and shall be signed by the presiding officer and secretary of such caucus, convention, mass meeting or other assembly or by the canvassing board of such primary election, and be duly acknowledged by one or more of them before any officer authorized by law to take the acknowledgments. The board of county commissioners shall also cause to be printed upon said ballots the name of any qualified elector who has been requested to be a candidate for any office by written petition signed, in case of a candidate for a State or Federal office, by at least five hundred electors, in a case of a county or municipal office, by at least twenty-five electors qualified to vote in the election to fill said office, when such petition has been filed with them not more than sixty days nor less than twenty days previous to the election. And in addition to the name printed upon said ballot and whether there be any names printed on said ballots or no, there shall be printed under each office to be voted for at the election, blank lines in number equal to the number of persons who may be elected to fill that office. The name of no person shall be printed upon the ballot who shall, not less than twenty days before the election, notify the board of county commissioners, in writing, acknowledged before an officer authorized by law to take acknowledgments, that he will not accept the nomination specified in the certificate of nomination or request of electors. *Provided, however,* That when any person who had been regularly nominated

and who shall decline to run for the office to which he has been nominated, the party by which such person was nominated shall be allowed five days after such declination to run by such persons, in which to substitute another candidate. In case of any person to be voted for by the electors of the whole State, or of any entire Congressional District, such certificate of nomination shall be filed in the office of the Secretary of State not less than thirty days before the day of election, and such Secretary of State shall thereupon immediately certify to the board of county commissioners of each county in the State in case of an officer to be voted for by the electors of the whole State, and to the boards of county commissioners of the counties composing the Congressional District in case of an officer to be voted for by the electors of such district, upon suitable blanks to be prepared by him for that purpose, the fact of such nomination and the name of the nominee or nominees, and the name of the office to which he or they may be nominated, and the name of such person shall be printed by the board of county commissioners upon the ballot in its proper place in all respects as herein provided for nominations filed in the office of the board of county commissioners; and any Secretary of State who shall wilfully fail or refuse to certify such nominations as herein provided shall be guilty of a misdemeanor, and, on conviction, shall be fined not more than one thousand dollars; and in the event of such failure or refusal, such certificate shall be made by the State Comptroller.''

Section 30, Chapter 4328, was amended by Section 10, Chapter 4537, Acts of 1897, and said Section 30, as amended by Section 10, Chapter 4537, Acts of 1897, became Sections 212, 213, 214, 215 and 3824 of the General Statutes of 1906, and Sections 256 (212), 257 (213), 258 (214), 259 (215) and 5885 (3824) of the Revised General Statutes of 1920. Section 256 (212) of the Revised General Statutes, being an amendment of the first portion of Section 30, Chapter 4328, Acts of 1895, was amended by Chapter 9293, Acts of 1923, and again amended by Chapter 12038, Acts of 1927, becoming Section 312 (256) Compiled General Laws; and

was again amended by Chapter 14627, Acts of 1931. See page 26 of 1932 Supplement to Compiled General Laws of Florida, 1927. The latter portions of the quoted Section 30, Chapter 4328, Acts of 1895, now appear as Sections 313 (257), 314 (258), 315 (259) and 8148 (5885) of the Compiled General Laws of Florida, 1927.

A part of the last paragraph of Section 30, Chapter 4328, which is brought forward as Section 315 (259) Compiled General Laws, is now to be interpreted in connection with Sections 314 (258) and 313 (257) Compiled General Laws, as well as with Sections 414 (357) and 415 (358) Compiled General Laws, the same being Sections 53 and 54 of Chapter 6469, the general primary election law. Section 315 (259) Compiled General Laws, should also be interpreted in connection with Section 312 (256) Compiled General Laws, as last amended by Section 1, Chapter 14657, Acts of 1931, which last enactment has reference to provisions in Section 411 (354) Compiled General Laws, as amended by Section 14, Chapter 13761, Acts of 1929, the latter being the latest amendment of Section 50 of Chapter 6469, Acts of 1913, the general primary election law of the State.

So interpreted, Section 315 (259) Compiled General Laws, requires the Secretary of State under Section 1, Chapter 14657, Acts of 1931, amending section 256 Revised General Laws, Section 319, Compiled General Laws, to certify to the county commissioners "only the names of the candidates who have been put in nomination by primary election, or the appropriate executive committee, of any political party in this State, * provided that all committee nominations shall be made as provided by the laws governing primary elections." "The laws governing primary elections" authorize the appropriate executive commitee of a political party to nominate party candidates for elective offices *only* where a political party had candidates for an elective office in the next preceding primary election, and

when (1) "no candidate" of the party had received "a majority of the votes cast therein for such office" and (2) "In the event of the death, resignation or removal of any person nominated for office in a primary election, between such primary election and the ensuing general election, or if for any cause there is a vacancy in any nomination, and no method is otherwise provided herein for filling such vacancy, then in that event the procedure shall be the same as hereinbefore provided for the nomination of candidates in case no candidate receives a majority of the votes cast in the primary election and all such nominations shall have the same force and effect and shall entitle the nominees to all the rights and privileges that would accrue to them as if they had been nominated in the regular primary election." Section 411 (354) Compiled General Laws, as amended by Section 14, Chapter 13761, Acts of 1929. See page 65 of 1932 Cumulative Supplement to Compiled General Laws of Florida, 1927. See also Sections 414 (357) and 415 (358) Compiled General Laws, the same being Sections 53 and 54 of Chapter 6469, Acts of 1913, the general primary law of the State.

A petition filed in this court alleges that the relators are adult residents of Florida; "that relators John Barnett, Armando Lopez, Manuel Menendez, Arnold Nelson, Walter Peck, Enroqueta Palacios, and Frank Voigt were duly, properly and legally nominated as Presidential electors, and Paul Lima was duly, properly and legally nominated for Governor of the State of Florida on the Communist Ticket by the Communist party, which is a recognized political party in the United States, having its candidates for various State and National offices on the official ballots of over forty (40) States of the United States, and which had its candidates' names on the official ballot in the State of Florida at the general election for National and State officers in 1928. That relators were each and all nominated

as provided by Section 312, Compiled General Laws of Florida, 1927, 256 Revised General Statutes of 1920, as amended by Chapter 14657, Laws of 1931, and the names of the relators were duly certified as the nominees of the Communist party which certificate of nomination was filed in the office of the respondent, R. A. Gray, Secretary of State of the State of Florida more than thirty (30) days before the day of such election, and that it was the duty of the said respondent to immediately certify to the Board of County Commissioners of each county in the State upon suitable blanks prepared by him for the purpose the fact of such nomination and the name of relators as the nominees of the Communist party and the name of the office to which each one of the relators was nominated so that the Boards of County Commissioners of the several counties in the State of Florida could print the names of the relators upon the official ballot for said election in their proper places on said ballot.''

It is alleged that it is the duty of the respondent under section 315 (253) C. G. L. to certify, but the respondent refused to certify the names of relators to the county commissioners, and it is prayed that the respondent ''be required by writ of this court to certify to the boards of county commissioners of the several counties in the State of Florida the names of your relators and the names of the offices to which they have been nominated as the nominees of the Communist party.''

Neither the Fifteenth nor the Nineteenth Amendments to the Federal Constitution is involved here, since there is no question of the right of a citizen of the United States to vote being denied or abriged on account of race, color or previous condition of servitude, or on account of sex.

The law of this State is that ''every person of the age of twenty-one years and upwards that shall, at the time of registration, be a citizen of the United States, and that

shall have resided and had his or her habitation, domicile, home or place of permanent abode in Florida for one year, and in the county for six months, shall, if otherwise qualified according to law in such county, be deemed a qualified elector at all elections under the constitution,'' Sec. 284 (215) Com. Gen. Laws, 1927.

The word ''male'' as it appears in Section 1, Article VI Florida Constitution of 1885, as amended in 1894, is regarded as having been eliminated from the organic law of the State defining qualified electors, by the adoption in 1920, of the Nineteenth Amendment to the Constitution of the United States. See Neal v. State of Delaware, 103 U. S. 370, text 389, 26 Law Ed, 567.

The present general election law of Florida was first enacted as Chapter 4328 Acts of 1885, and the present primary election law of the State was first enacted as Chapter 6469 Acts of 1913. Subsequent enactments changed various provisions of both laws and the provisions of each law as amended to and including the legislative session of 1927, appear in the Compiled General Laws, 1927; in Sections 248 (215) *et seq.*, the section numbers in parenthesis being the corresponding section numbers in the Revised General Statutes of 1920.

Section 30 of Chapter 4328 Acts of 1895, the general election law, relates to the candidates whose names are to be printed at public expense on the general election ballots and to the duties of the Secretary of State and the County Commissioners with reference thereto. The latter portions of original Section 30, Chapter 4328, appear as Sections 313, (257) 314 (258) and 315 (259) Compiled General Laws, 1927. The first portions of said Section 30, have been several times amended and now appear as Section 1, Chapter 14657, Acts of 1931, amending Section 312 (256) Compiled General Laws, 1927. See page 26 of 1932 Cumulative Supplement to Compiled General Laws, 1927. Sec-

tion 315 (259) Compiled General Laws, 1927, has relation
to Section 312 (256) as amended by Section 1, Chapter
14657 Acts of 1931, and to Sections 313 (257) and 314
(258) Compiled General Laws, 1927; and Section 312 (256)
Compiled General Laws, 1927, as amended by Chapter
14657 has relation to Section 411 (354) as amended by
Chapter 13761 Acts of 1929. The duties of the Secretary
of State under Section 315 (259) Compiled General Laws,
1927, are to be interpreted with reference to Section 1,
Chapter 14657 Acts of 1931, amending Section 312 (256)
Compiled General Laws, 1927, and to Section 411 (354)
Compiled General Laws, 1927, as amended, and to Section
313 (257) and 314 (258) Compiled General Laws, 1927.
So interpreted, Section 315 Compiled General Laws, 1927,
does not require the action demanded.

The first part of Section 1, Chapter 6469 Acts of 1913,
the primary election law, now Section 355 (299) Compiled
General Laws, 1927, provides that all political party can-
didates for elective offices shall be nominated by primary
election, in order to have the names of the party candidates
placed upon the official ballot to be voted at any general
election. The latter part of such Section 1, Chapter 6469
defines ''a political party,'' under the primary election law,
and requires that all nominations of candidates for elective
offices shall be under the provisions of the primary election
law ''and not otherwise.'' As last amended the latter part
of original Section 1, of Chapter 6469 Acts of 1913, now
appears as Section 1 of Chapter 13761 Acts of 1929, amend-
ing Section 356 (300) Compiled General Laws, 1927. See
page 61 of 1932 Cumulative Supplement to Compiled Gen-
eral Laws, 1927. Section 54 of Chapter 6469, the primary
election law, now Section 415 (358) Compiled General
Laws, 1927, requires the Secretary of State to certify to
the county commissioners of each county the names of
nominees and the offices to which they may be nominated.

The requirements of Section 415 (358) Compiled General Laws, 1927, have relation to the provisions of Section 411 (354) Compiled General Laws, 1927, as amended by Section 14 of Chapter 13761 Acts of 1929, and to Sections 412 (355) 413 (356) and 414 (357) Compiled General Laws, 1927. Amended Section 411 (354) Compiled General Statutes, 1927, Section 14, Chapter 13761, has relation to Section 312 (256) Compiled General Laws, 1927, as amended by Section 1 of Chapter 14657 Acts of 1931.

The amendments to sections and parts of sections have the same relation to other portions of the same law as did the sections or parts of sections that were amended. Section 415 (358) Compiled General Laws, 1927, interpreted in connection with Section 411 (354) Compiled General Laws, 1927, as amended, and with Section 412 (355), 413 (356) and 414 (357) Compiled General Laws, 1927, and with amended Section 312 (256) Compiled General Laws, 1927, do not require the certificate demanded of the Secretary of State.

As the law now is the candidates nominated for office whose names are required to be certified by the Secretary of State and to be printed on the official general election ballots by the county commissioners, are *only* the names of those candidates who have been nominated as defined by Section 1 of Chapter 14657 Acts of 1931, amending Section 312 (256) Compiled General Laws, 1927, interpreted in connection with Section 14, Chapter 13761, Acts of 1929, amending Section 411 (354) Compiled General Laws, 1927.

It appears by the statutes that the county commissioners are required to have printed on the general election ballots only the names of such candidates for elective offices as have been duly nominated for such offices respectively ''by primary election;'' or by ''the appropriate executive committee of any political party in this State,'' when ''no candidate shall receive a majority of the votes cast'' in the

primary ''for such office;'' or when there is a vacancy in a nomination duly made in a primary election. State *ex rel.* Chamberlain vs. Tyler, 100 Fla. 1112, 130 South. Rep.. 721. And the law does not require the Secretary of State to certify to the county commissioners the names of any candidates except those required to be printed on the official ballots used for voting at the general election.

The petition alleges that ''relators were each and all nominated as provided by Section 312 Compiled General Laws of Florida, 1927, 256 Revised General Statutes as amended by Chapter 14657 Laws of 1931, and ''that although everything has been done that is required of a political party under the existing statutes that are within the purview of State and Federal Constitutional provisions, and although such certificate of nomination was filed in the office of the respondent, as required by law,'' the said respondent failed and refused to certify the names of relators to the county commissioners so' that relators' names can be printed upon the official ballot for the general election.

In so far as such allegations are of conclusions they are not sustained by the allegations of the petition when considered in connection with the statutes which regulate the nomination of party candidates to be printed on the official ballots at the general election. The statutes provide that the nomination of all candidates for all elective officers, by all political parties as defined by the statute, shall be made in the manner provided in the statute, ''and not otherwise'' (Sec. 355 (299) Com. Gen. Laws, 1927) ; that ''the board of county commissioners of each county shall cause to be printed on the ballots to be used in their respective counties, *only* the names of the candidates who have been put in nomination by primary election, or the appropriate executive committee, of any political party in

this State, when the same have been certified and filed with them. * * *

Provided, that all committee nominations shall be made as provided by the laws governing primary elections," Sec. 312 (256) Compiled General Laws as amended by Chapter 14657, Acts of 1931; that if no candidate shall receive a majority of the votes cast for an office in the second primary, or in the event of death, resignation or removal of any person nominated for office in a primary election, between such primary election and the ensuing general election, or if for any cause there is a vacancy in any nomination, the appropriate executive committee of the party shall have power to nominate, by majority vote, a candidate for such office &c., Sec. 411 (354) Comp. Gen. Laws, 1927, as amended by Chapter 13761 Acts of 1929. Section 312 (256) Compiled General Laws 1927, as amended in 1931, provides "that all committee nominations shall be made as provided by the laws governing primary elections," and Section 411 (354) Compiled General Laws, 1927, as amended in 1929, is the law referred to.

The proviso in amended Section 312 (256) Compiled General Laws, 1927, Section 1 Chapter 14657, Acts of 1931, that "all committee nominations shall be made as provided by the laws governing primary elections," has reference to the provisions of the primary election law prescribing the cases in which and the method by which candidates of a political party for elective offices may be nominated by its appropriate executive committee.

Section 411 (353) Compiled General Laws, 1927, as amended by Chapter 13761 Acts of 1929, is the law governing primary elections on the subject of executive committee nominations; and it provides for appropriate executive committee nominations only when the party had candidates for the nomination in a primary and no such candidate received a majority of the votes in the second

primary or when a vacancy occurs before the general election in a nomination that had been duly made in the preceding primary election.

It thus appears that "only the names of candidates who have been put in nomination by primary election or the appropriate executive committee of a political party" can lawfully be printed on the general election ballots; and that the statutes permit a nomination of a political party candidate by the appropriate executive committee of the party, to be printed on the official election ballots, only when the party had candidates for the office in the preceding primary election and no candidate of the party received a majority of the votes cast for a nominee of the party for the office at the primary election; or when the appropriate committee duly nominates a candidate to fill a vacancy in a party nomination that had been made in a primary election. See State *ex rel.* Chamberlain v. Tyler, 100 Fla. 1112, 130 South. Rep. 721; State *ex rel.* v. Peacock, — Fla. —, — So. Rep. —, filed September 27, 1932; State ex rel. v. Belote, filed Oct. 6, 1932, 106 Fla. 939, 143 So. 881. It is not alleged that the relators were nominated in a primary election; nor is it alleged that the relators were nominated by the executive committee of a political party as candidates for the respective offices named, because no candidates of that party had received a majority of the votes cast for such offices in the primary election in which the party had candidates for such nominations, or that the relators were nominated by the appropriate executive committee to fill vacancies in nominations that had been made in the primary election by a political party as defined by the statute. The allegations of the petition show that the nominations of the relators as candidates were not made as required by the statutes, to authorize their names to be printed on the general election ballots, therefore the law does not require

the Secretary of State to make the certificate prayed to be commanded by mandamus.

The petition alleges "that the respondent bases his refusal to certify the names of relators and the offices to which they have been nominated, to the boards of county commissioners of the several counties of the State of Florida, on the provisions of Section 356 Compiled General Laws of the State of Florida, 1927, which defines a political party," "which said statute is not only contrary to public policy, but in violation of both the State and Federal Constitutions" for stated reasons. Section 356 (300) Compiled General Laws, 1927, was amended and superseded by Section 1, Chapter 13761, Acts of 1929, which is as follows:

"Any political party which, in either of the two general elections next preceding a primary, polled more than 30 per cent. of the entire vote cast in the State for its candidates for presidential electors, or any other officer voted for throughout the State, is hereby declared to be a political party within the meaning of this Article, and shall nominate its candidates for all elective offices to be voted for in the next ensuing general election, under the provisions of this Article, and not otherwise."

The ground of illegality alleged against the original section, which are now applied to the section as amended and above quoted, are that "if such statute is constitutional, it would absolutely prohibit any political party which did not receive more than thirty (30) per cent. of the total vote cast in a general election from participating in State politics or National politics within the State, and would preclude the giving of credits to any political party which had not been previously recognized as a political party under the statutes for any ballots where the names of candidates other than candidates of a recognized political party had been written in the ballot. The ballots cast by writing in the name of any candidate regardless of the proportion of electors casting such ballots could only under

the existing statute be credited as ballots cast for an independent candidate and therefore, could not be credited to any political party nor aid in the establishment of a new legally recognized political party; that the statute violates the very principles of the Constitution of the State of Florida in that it fails to insure domestic tranquility and instead of guaranteeing, it denies the right of equal, civil and political rights; violates Sections One and Six of the Declaration of Rights of the State of Florida; violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, being Section 1 of Article 14, and especially that portion thereof which reads as follows: 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;' it violates and is in derogation of the principles enunciated in the preamble to the Federal Constitution in that it is directly opposed to domestic tranquility and tends rather to insure confusion and disorder; it is in violation of Section 2 of Article 4 of the Federal constitution in that it would tend to deprive citizens of this State the privileges and immunities of citizens in the several States.''

The statutes contemplate that appropriate certificates of all nominations of candidates for State or National officers to be voted for at a general election, shall be filed with the Secretary of State, who shall certify to the county commissioners the names of those duly nominated candidates who are entitled to have their names printed on the general election ballots. It is expressly provided that ''in addition to the names printed on such ballots, or whether any names be printed thereon, as herein before provided, there shall be printed under each office to be voted for at the election, blank lines in number equal to the number of persons who may be elected to fill that office.'' Section 312 (256) Com-

Gen. Laws, 1927, as amended by Chapter 14657, Acts of 1931.

The filing in the office of the Secretary of State a certificate of the nominations made by a political party as was done in this case, and the right to vote for candidates on blank lines on the election ballots, enable the members of *any* political party to make a record of nominations of candidates for office made by their party, and to vote for such candidates at the general election; since if such nominations cannot legally be certified and printed on the election ballots, the members of such party, if they are duly qualified electors, may vote for the names of their choice by writing the names and placing the X mark opposite the names on the blank lines printed under the offices on the ballots at the election. Conveniences for so voting being supplied under the statute. Sec. 324 (268) Com. Gen. Laws, 1927.

In this way the votes duly cast for those persons who are candidates of a political party as such candidates are shown by the certificate of the party officials on file in the office of the Secretary of State, may be credited to that political party in determining whether the party has polled the requisite percentages of the entire vote cast, to be classed as a political party under the statutes of the State so as to entitle such party to make nominations of candidates by primary election and to have the names of its duly nominated candidates printed on the general election ballots at the expense of the public. These opportunities and privileges are open to all alike and afford at public expense reasonable means for qualifying as a political party having privilege under the statute; and the statutory provisions in no way deny the equal protection of the laws to any one; and afford no preferences or discriminations. State ex rel. Montgomery vs. Anderson, 18 N. D. 149, 118 N. W. 22 (which upheld provision requiring 30 per cent. of vote cast

before name could be printed on ballot as nominee of party); DeWalt vs. Bradley, 146 Penna. 529, 24 Atl. 185, 15 L. R. A. 771, 28 Am. St. Rep. 814. State ex rel. Mc-Grael vs. Phelps, 144 Wis. 1, 128 N. W. 1041, 35 L. R. A. (N. S.) 353.

It is not contended that the required 30 per cent. of the entire vote at a general election to constitute a political party under the election laws of this State, is so great a proportion as to deny the equal protection of the laws to, or to unjustly discriminate against, the members of a party having a relatively small membership; and it is not otherwise shown that the statutes deny the equal protection of the laws. Though it is alleged that the ''Communist Party'' had its candidates' names on the official ballot in the State of Florida at the general election for National and State offices in 1928;'' the Relators have made no showing of any votes cast at any election in this State for candidates of the ''Communist Party'' or of ''The Communist Party of the State of Florida,'' which latter is the party whose executive committee nominated the relators.

It is not shown or perceived how the statutory provisions complained of violate Sections 1 and 6 of the Declaration of Rights, or abridge the privileges or immunities of citizens of the United States, or disturb ''domestic tranquility.''

Petition denied.

BUFORD, C.J. AND BROWN AND DAVIS, J.J., concur.